J-S27036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GABRIEL ALEXANDRO RAMOS | : | |
| | : | |
| Appellant | : | No. 2055 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 15, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0003583-2020

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED DECEMBER 18, 2024**

Gabriel Alexandro Ramos appeals from the July 15, 2022 amended, aggregate judgment of 30 to 60 years' imprisonment imposed after a jury found him guilty of attempted criminal homicide, aggravated assault, and attempted criminal homicide of an unborn child.[1]  Contemporaneously with this appeal, Sean T. Poll, Esq. (hereinafter, "Counsel"), has filed a brief and petition to withdraw in accordance with **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and its progeny.  After careful review, we grant Counsel's petition to withdraw and affirm the judgement of sentence.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a), 2702(a)(1), and 2604(a), respectively.

The trial court summarized the lengthy factual history of this case as follows:

> On [September 10, 2020], the Allentown Police Department was dispatched to the area of the 100 block of East Hamilton Street, Allentown, Lehigh County, Pennsylvania, for a welfare check of a woman lying on the ground in a wooded area flanking Hamilton Street. Officer Cody Mullins and Officer Neil Battoni of the Allentown Police Department, dressed in full police uniform and in a marked unit, responded to this call. Upon their arrival, the 911 caller (identified as Moises Torres) directed them to the location of the woman, frantically stating that the officers needed to hurry because the woman was dying in the woods. In order to get to the woman's location, the officers had to jump a barricade on Hamilton Street and walk through a heavily weeded/long grassy area within the small patch of woods. The area was secluded and pitch black.
>
> Upon their approach through the dense vegetation, they observed the victim, later identified as [A.R.], a pregnant 17 year old juvenile, lying on the ground, bleeding heavily from a large stab wound to her back and a slashed throat. Her shirt was saturated in blood, and there was a substantial amount of blood emanating from her neck region. [The victim] was unable to move or speak due to her significant wounds. Officer Mullins and Officer Battoni used trauma scissors to cut [the victim's] shirt off of her torso in order to assess the severity of her wounds. The officers then applied a sterile dressing on the major stab wound on [the victim's] back in an attempt to stop the bleeding from that site. In an effort to slow down the bleeding from the neck region, the officers applied pressure to that area of her body.
>
> The City of Allentown Paramedics were dispatched to the scene to stabilize and transport [the victim] to Lehigh Valley Hospital – Cedar Crest campus for medical treatment and care. Officer Mullins and Officer Battoni assisted the emergency medical team

in securing [the victim] onto a litter and in carrying her to the ambulance. While being tended to by the paramedics in the rear of the Paramedic Unit, [the victim] was asked if she knew the identity of her assailant. Unable to speak as a result of her horrific injuries, [the victim] nodded her head in the affirmative. Sergeant Scott Snyder of the Allentown Police Department asked the victim to write down the name of her attacker. Sergeant Snyder provided [the victim] with a pen and paper, and the victim proceeded to write down, [Appellant,] "Gabe Ramos." Ultimately the victim was transported to Lehigh Valley Hospital – Cedar Crest campus, where she was listed in critical condition and underwent emergency surgery. [The victim] remained at Lehigh Valley Hospital until October 2, 2020, and then was transferred to the Good Shepherd Rehabilitation facility, where she remained until October 26, 2020. At the Good Shepherd Rehabilitation Hospital, [the victim] received physical therapy to help her walk again. As a result of the horrific injury to her spine, [the victim] still has difficulty running, standing for protracted periods of time, and walking long distances. Additionally, she suffers from back pain and has severe and significant scarring on her neck and back.

According to [the victim], earlier in the day, she had been working at McDonalds on Union Boulevard from 2:00 P.M. until 9:30 P.M. During her shift, she and [Appellant] had been exchanging texts with regards to meeting up for sexual relations. They had planned to meet around 9:40 P.M. at the Hamilton Street Bridge. After work, [the victim] took an Uber to the Lehigh Valley Overlook and then walked to the Hamilton Street Bridge. Upon [Appellant's] arrival, they went to a "storage garage" and engaged in sexual intercourse. Afterwards, [Appellant] asked [the victim] to take a walk with him. [Appellant] led [the victim] into the dark, wooded area off of Hamilton Street. While [Appellant] and [the victim] were walking into the wooded area, he asked her to give him her cell phone. [The victim] did not think anything of this request and complied. After they

stopped walking, [Appellant] began to massage [the victim's] shoulders from behind. While he was massaging her shoulders with one hand, he simultaneously was rummaging through his black North Face backpack. Without any warning, [Appellant] then slashed [the victim's] throat. He told her that he did not want the baby. [The victim] fell to the ground, and [Appellant] kicked her in the side. She then heard her cell phone smash in the distance.

On September 12, 2020, Detective Miguel Villa of the Allentown Police Department interviewed [Appellant]. At the time of the incident, [Appellant] was approximately one (1) month shy of his eighteenth birthday. [Appellant] was living his girlfriend, Tatiana Merced, and their two (2) year old child. Initially, he denied knowing the victim outside of work, and indicated that he had no personal relationship with her. [Appellant] denied ever having sexual intercourse with [the victim]. However, [Appellant] eventually admitted to meeting up with [the victim] on September 10, 2020, to have sexual relations with her. [Appellant] indicated that after they had sexual intercourse, they parted ways, with [the victim] heading westbound on Hamilton Street, and [Appellant] heading eastbound on his bicycle. [Appellant] further stated that his bicycle tire suffered a flat and he left the bicycle on the side of the road by a bus stop. [Appellant] further indicated to Detective Villa that his cell phone has since been "reset" and that he has deleted all of his social media presence from the internet. [Appellant] adamantly denied his involvement in the brutal stabbing and slashing of [the victim]. Overall, Detective Villa found [Appellant] to have a "cold" demeanor throughout the interview process.

Trial court opinion, 11/10/21 at 2-7 (citations and footnotes omitted).

Appellant was subsequently charged with, ***inter alia***, attempted criminal homicide, aggravated assault, attempted criminal homicide of an unborn child. On June 6, 2022, Appellant proceeded to a jury trial in

- 4 -

connection with this incident and was found guilty of the aforementioned offenses on June 8, 2022. As noted, the trial court sentenced Appellant to an aggregate term of 30 to 60 years' imprisonment on July 15, 2022. On July 25, 2022, Appellant filed timely post-sentence motions that were denied by the trial court on August 24, 2022. Appellant did not file a direct appeal.

On October 31, 2022, Counsel was appointed to represent Appellant. Thereafter, on May 12, 2023, Counsel filed a timely Post Conviction Relief Act ("PCRA")[2] petition on Appellant's behalf, seeking the reinstatement of his direct appeal rights. On July 20, 2023, the PCRA court granted Appellant's petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. This timely appeal followed on August 8, 2023.[3] On March 8, 2024, Counsel filed an *Anders* brief and a petition to withdraw.[4] Appellant has not responded to Counsel's petition to withdraw.

As a preliminary matter, to withdraw under *Anders*, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw and state that after making a conscientious examination

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

[4] On November 5, 2024, we issued a *per curiam* order directing the Prothonotary to docket Counsel's motion to withdraw that was attached to his March 8, 2024 *Anders* brief as a separate application to withdraw as counsel, and reminded Counsel that motions must be filed separately from appellate briefs.

of the record, he has determined that the appeal is frivolous." *Commonwealth v. Martuscelli*, 54 A.3d 940, 947 (Pa.Super. 2012), quoting *Santiago*, 978 A.2d at 361. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and(4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

With respect to the briefing requirements, *Anders* does not require "that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. [W]hat the brief must provide under *Anders* are references to anything in the record that might arguably support the appeal." *Santiago*, 978 A.2d at 359-360.

Finally, *Anders* counsel must furnish a copy of the *Anders* brief to his client and "advise[] him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention, and attach[] to the *Anders* petition a copy of the letter sent to the client." *Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa.Super. 2010) (citation omitted). "[If] counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and

render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa.Super. 2007) (***en banc***) (quotation marks and quotation omitted).

Our review of Counsel's petition to withdraw and his ***Anders*** brief reveals that Counsel has sufficiently complied with the foregoing requirements. We note that Counsel furnished a copy of the brief to Appellant, and provided him with a letter advising him of his right to retain new counsel, proceed ***pro se***, and/or raise any additional points that he deems worthy of this Court's attention, pursuant to ***Commonwealth v. Millisock***, 873 A.2d 748, 751-752 (Pa.Super. 2005). As Counsel has complied with all of the requirements set forth above, we conclude that Counsel has satisfied the procedural requirements of ***Anders*** and ***Santiago***. We, therefore, proceed to conduct an independent review to ascertain whether the appeal is wholly frivolous. ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa.Super. 2018) (***en banc***).

Counsel's ***Anders*** brief sets forth the following issues that Appellant wishes to raise on appeal:

**I & II. Sufficiency & Weight of the Evidence**

Appellant first argues that there was insufficient evidence to sustain his convictions for the aforementioned offenses because the testimony presented at trial failed to identify him as the individual who attempted to murder the victim. ***Anders*** brief at 12-13. Though couched in terms of both sufficiency

and weight, Appellant's claim challenging his identification as the assailant is more properly construed as a challenge to the weight of the evidence. *See Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa.Super. 2006) (stating, "any uncertainty in an eyewitness's identification of a [Appellant] is a question of the weight of the evidence, not its sufficiency"), *appeal denied*, 916 A.2d 1101 (Pa. 2007); *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence).

Here, it is undisputed that Appellant and the victim were familiar with each other and had sexual relationship. Notes of testimony, 6/7/22 at 40-42. The record further reflects that the victim, who was unable to speak immediately following the attack due to her throat injuries, identified Appellant as her assailant to Sergeant Snyder, by writing down his name on a piece of paper. *Id.* at 82; notes of testimony, 6/6/22 at 61-62. In a subsequent interview with Detective Villa, Appellant acknowledged meeting up and having sexual intercourse with the victim on the evening in question, but denied his involvement in her attempted murder. Notes of testimony, 6/7/22 at 142-144; Commonwealth's Exhibit No. 42.

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632,

643 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 183 A.3d 970 (Pa. 2018). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Galvin***, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), ***cert. denied***, 559 U.S. 1051 (2010).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we find that Appellant's claim that the verdict was against the weight of the evidence must fail. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), *appeal denied*, 926 A.2d 972 (Pa. 2007).

Here, the jury, as factfinder, clearly found the victim's identification testimony credible, and elected not to believe Appellant's version of the events. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. *Clay*, 64 A.3d at 1055. Accordingly, we conclude that Appellant's weight claim is wholly frivolous.

## III. Motion to Transfer to Juvenile Court

Appellant next argues that the trial court erred in denying his motion to transfer this case to juvenile court. *Anders* brief at 14-16.

> [W]hen jurisdiction vests with the criminal division under [42 Pa.C.S.A. § 6302], the juvenile may seek a transfer to the juvenile system through the process of decertification. In determining whether to transfer a case charging murder or any offense excluded from the definition of 'delinquent act' in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. To assess if a transfer will serve the public interest, the court considers the factors in set [42 Pa.C.S.A. § 6355(a)(4)(iii)].

*Commonwealth v. L.P.*, 137 A.3d 629, 635 (Pa.Super. 2016) (internal quotation marks and some citations omitted; citation formatting amended).

- 10 -

Section 6355(a)(4)(iii) provides as follows:

(iii) ... In determining whether the public interest can be served, the court shall consider the following factors:

(A)   the impact of the offense on the victim or victims;

(B)   the impact of the offense on the community;

(C)   the threat to the safety of the public or any individual posed by the child;

(D)   the nature and circumstances of the offense allegedly committed by the child;

(E)   the degree of the child's culpability;

(F)   the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal system; and

(G)   whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

In **Commonwealth v. Thomas**, 67 A.3d 838 (Pa.Super. 2013), **appeal denied**, 89 A.3d 661 (Pa. 2014), this Court held that "[i]f the evidence presented fails to establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division." **Id.** at 842-843 (citation omitted).

Upon review, we agree with Counsel that Appellant's claim in this regard is wholly frivolous. As the trial court properly recognized in its opinion, Appellant has not borne the heavy burden to prove that transfer to the juvenile court would serve the public interest. The trial court reasoned as follows:

> [Appellant] was seventeen (17) years old at the time of this incident, just shy of his eighteenth birthday. Prior to being arrested in the within matter, [Appellant] was not involved in the juvenile criminal system and spent no time in a juvenile facility. Indeed, he has no history of criminal, behavior. [Appellant] presents as a mature individual as a result of being a father since the age of fifteen (15) and maintaining consistent employment from a very young age.

Without a doubt, the nature and circumstances of the within alleged offense are extremely serious and monstrous. [Appellant] was the sole participant in the crime – he independently planned the ruthless attach on a pregnant juvenile and executed it himself. This was not a spur of the moment crime. Rather, [Appellant] took several calculated steps to commit this crime. First, [Appellant] chose to lead the victim to an isolated and out-of-the-way location in order to be sheltered from view while he forcefully penetrated her back with a knife and slit her throat. By selecting a sequestered location to carry out his plan, he also savvily attempted to assure that the victim would not immediately be found. In addition, while walking to the wooded area within the City of Allentown, [Appellant] stripped the victim of her cell phone; her only means with which to call for help after being brutally attacked, essentially leaving her and her unborn child there to die. This offense was not the result of provocation, and therefore [Appellant] had adequate time to think about the situation and not follow through with his scheme. Because of the planning time involved, [Appellant] had a clear opportunity to make a decision to withdraw from the circumstances. However, he chose not to. The nature of the crime itself and [Appellant's] execution of it demonstrated criminal sophistication. No factors weigh so heavily to this Court as do the sophistication of the crimes committed, [Appellant's] degree of culpability in the commission thereof, and the nature and circumstances of the offenses.

Additionally, [Appellant's] actions posed a grave risk to the victim and the community at large. [The victim] and her unborn child could have died as a result of these serious injuries. Indeed, she remained at Lehigh Valley Hospital for almost a month and then was transferred to the Good Shepherd Rehabilitation Hospital, where she remained for three (3) weeks, learning how to walk again. As a result of the horrific injury to her spine, [the victim] still has difficulty running, standing for protracted periods of time, and walking long distances. Additionally, she suffers from back pain and has severe and significant scarring on,

her neck and. back. Dr. Dattilio opined that it would not be unlikely for [the victim] to suffer from post-traumatic stress as a result of the injuries. It is undeniable that the victim and the victim's family have been negatively affected by these terrible crimes. Also, the community was severely impacted by this heinous assault. This type of brutal criminal activity causes others in the community to be concerned for their safety and to fear that similar occurrences will transpire. The community would be best served by maintaining [Appellant's] adult status.

Furthermore, Dr. Frank Dattilio opined that, if [Appellant] did not commit the assault, he believed that [Appellant] is amenable to treatment and rehabilitation in the juvenile system prior to the age of twenty-one (21). However, Dr. Dattilio openly acknowledged that if [Appellant] was the one who perpetrated the aggressive acts against the victim, then the picture would change drastically, and it would not be likely that [Appellant] would be able to rehabilitate within the confines of two (2) years, prior to the age of twenty-one (21). Dr. Dattilio indicated that [Appellant's] lack of acceptance of responsibility for his actions would present a serious impediment to rehabilitation.

Similarly, Lehigh County Juvenile Probation Officer Christina Anthony opined that decertification to juvenile court is not appropriate in this situation and that the juvenile system is inadequate to supervise, treat, or rehabilitate [Appellant] before [Appellant] turns twenty-one (21) years old. Probation Officer Anthony explained that the duration of the placement in a juvenile facility depends on both the facility and the juvenile's investment in treatment. In this case, [Appellant] does not accept responsibility for the crime. Probation Officer Anthony echoed Dr. Dattilio's concern that this would pose a significant barrier to treatment, and is indicative of [Appellant's] reduced amenability to treatment, supervision or rehabilitation prior to his attainment of age twenty-one (21). This Court recognizes that juvenile court jurisdiction ends at the age of twenty-one (21) regardless of whether

> or not [Appellant] continues to pose a threat to society. A period of two (2) years is abjectly inadequate to expect that [Appellant] would respond to treatment.

Trial court opinion, 11/10/21 at 8-11 (citations omitted).

Based on the foregoing, we find that the trial court properly denied Appellant's motion to transfer his case to juvenile court and Appellant's claim to the contrary is wholly frivolous.

## IV. Discretionary Aspects of Sentencing

Lastly, Appellant argues that his consecutive sentences of 20 to 40 years' imprisonment for attempted criminal homicide and 10 to 20 years' imprisonment for attempted criminal homicide of an unborn child were excessive and that the trial court failed to take into consideration his age, his complete lack of any criminal record, or any possibility of rehabilitation. *Anders* brief at 17-19.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). Appellant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision."

*Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa.Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 944 (Pa. 2018).

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1029 (Pa. 2019). On the contrary, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Instantly, the record reveals that although Appellant filed a timely notice of appeal and post-sentence motion preserving his sentencing claims, he failed to include a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). Nevertheless, *Anders* requires this court to review issues otherwise waived on appeal. *Commonwealth v. Lilley*, 978 A.2d 995, 998 (Pa.Super. 2009). Accordingly, we must now determine whether Appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013) (citation omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012) (citation omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013).

This Court has consistently recognized that "claims premised on imposition of consecutive sentences do not raise a substantial question for our review." *Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa.Super. 2018). "A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]" *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa.Super. 2015) (*en banc*), *appeal denied*, 126 A.3d 1282 (Pa. 2015). Likewise, "[a] bald or generic assertion that a sentence is excessive does not, by itself, raise a substantial question justifying this Court's review of the merits of the underlying claim." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa.Super. 2013) (citation omitted), *affirmed*, 125 A.3d 394 (Pa. 2015). Additionally, "a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Crawford*, 257

A.3d 75, 79 (Pa.Super. 2021) (citations omitted); *see also Caldwell*, 117 A.3d at 769 (holding that, "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor does not raise a substantial question.").

Based on the foregoing, we conclude that Appellant has failed to raise a substantial question for our review and his challenge to the discretionary aspects of sentencing is wholly frivolous.[5]

Finally, our independent review of the entire record, as required pursuant to *Anders*, reveals no additional non-frivolous claims. *Yorgey*, 188 A.3d at 1195. Accordingly, we grant Counsel's petition to withdraw and affirm Appellant's July 15, 2022 judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

---

[5] Even if Appellant had raised a substantial question for this Court's consideration, we would find he is not entitled to relief. The record reflects that the trial court thoroughly considered Appellant's lack of remorse for the victim and her unborn child, seriousness of the crime, Appellant's premeditation, and the fact he took several calculated steps to conceal what he had done. *See* notes of testimony, 7/15/22 at 28-29. The trial court also indicated that it was fully aware of Appellant's young age, lack of prior criminal record, and the importance of rehabilitation. Trial court opinion, 8/24/22 at 18. The trial court further noted that it carefully reviewed the pre-sentence investigation ("PSI") report in this matter. *Id.*; *see also* notes of testimony, 7/15/22 at 24. Where the trial court has the benefit of a PSI report, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the [Appellant]'s character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014). Based on the foregoing, we find that Appellant's discretionary sentencing claim would nonetheless fail.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/18/2024</u>